## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN EUROPEAN INSURANCE GROUP, INC., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 21-CV-10401-AK ) |
| NEI GENERAL CONTRACTING, WENDY'S DRYWALL, INC., and JOSHUA MENCHION, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM AND ORDER ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

**A. KELLEY, D.J.**

This is an insurance coverage dispute concerning the duty of an insurance company to

defendant and indemnify parties to a personal injury action pending in the Massachusetts

Superior Court.  Plaintiff American European Insurance Group ("AEIG") seeks a declaratory

judgment holding that it owes no duty to defend Wendy's Drywall, Inc. ("Wendy's") or NEI

General Contracting ("NEI") in the Superior Court action between Wendy's, NEI, and Joshua

Menchion ("Mr. Menchion").  On summary judgment, both AEIG and Mr. Menchion ask the

Court to rule as a matter of law on the question of AEIG's duty to defend and indemnify

Wendy's and NEI.

I.   BACKGROUND

In evaluating the cross motions for summary judgment,[1] the Court relies on AEIG's

statement of material facts, [Dkt. 21 at 2–7 ("SMF")], which Mr. Menchion does not dispute.

a.   Uncontested Facts

i.   The Insurance Contracts

AEIG issued a commercial general liability policy ("the CGL policy") to Wendy's, a

drywalling contractor.  [SMF ¶ 13].  The CGL policy contains a "disclosure notice," which states

"Your policy contains an exclusion of coverage for any claim or suit caused by bodily injury to

employees, contractors, and employees of contractors."  [Id.]  The disclosure notice refers to

Endorsement AE 0006, a separate provision in the policy, for additional terms on this exclusion

of coverage.  [Id.]  Endorsement AE 0006, in turn, excludes from coverage bodily injury to any

contractor, contractor's employee, or family member of a contractor's employee arising out of

services performed by that contractor.  [Id. ¶ 14].  It further excludes coverage for any obligation

Wendy's, as the insured party, accrues "to indemnify or contribute with another because

of damages arising out of such 'bodily injury.'"  [Id.]

The CGL policy contains further language defining the scope of additional insured

parties.  [Id. ¶ 16].  This language extends coverage, as additional insured parties, to "any person

or organization" with which the primary insured, Wendy's, had agreed in writing to add as an

additional insured parties prior to any injury giving rise to a claim.  [See id.]  The policy covers

additional insured parties only with respect to liability or injury caused by Wendy's acts or

---

[1] The Court construes Mr. Menchion's opposition [Dkt. 25] to AEIG's motion for summary judgment as a cross motion for summary judgment because he states that he "agrees that Summary Judgment is appropriate in this Case" and requests a dispositive ruling of law; specifically, that AEIG owes a duty to defend and indemnify Wendy's.

omissions, or acts or omissions of persons acting on Wendy's behalf "in performance of [its]

ongoing operations for the additional insured." [Id.]

In addition to the CGL policy, AEIG issued a commercial umbrella policy ("the umbrella

policy") to Wendy's. [Id. ¶ 17]. The umbrella policy provides coverage for Wendy's "ultimate

net loss" for bodily injury or property damage in excess of its limits on other insurance policies.

[See id.] The umbrella policy insures all additional insured policies on Wendy's underlying

insurance policies, [id. ¶ 18], and states that the CGL policy is one of the qualifying underlying

insurance policies, [id. ¶¶ 19–20]. Like the CGL policy, the umbrella policy contains similar

language excluding coverage for bodily injury to contractors and contractors' employees, and for

any obligation Wendy's accrues to indemnify or contribute with another party. [Id. ¶ 21].

### ii.  The Subcontractor Agreement

NEI, a general contractor, engaged Wendy's as a subcontractor. [SMF ¶ 22]. Article 13

of the subcontractor agreement between NEI and Wendy's requires Wendy's to carry various

forms of insurance. [Dkt. 21-4 ("Sub. Agmt.") § 13]. First, Wendy's is required to carry CGL

coverage at specified limits to "cover liability arising from premises, operations, independent

contractors, products-completed operations, and personal and advertising injury." [Id. § 13.1.1].

The agreement provides that "Contractor, Owner and all other parties required of the Contractor

shall be included as insured's [sic]" on Wendy's CGL policy through completion of an

endorsement form. [Id.]. In other words, upon completion of proper paperwork, NEI (the

"Contractor") and all parties it was required to insure were to be listed as additional insured

parties on Wendy's CGL policy. This policy would "apply as Primary and non-contributing

insurance before any other insurance or self insurance … maintained by, or provided to, the

additional insured." [Id.]. Wendy's was r equired to "maintain CGL coverage for itself and all

3

insured's [*sic*] for the duration of the project." [Id.; SMF ¶ 23].  The agreement further required

Wendy's to carry umbrella coverage, which "must include as insured's [*sic*] all entities that are

additional insured's [*sic*] on the CGL." [Sub. Agmt. § 13.1.4; SMF ¶ 24].  Wendy's was

required to name NEI as a "certificate holder" on Wendy's policies, and to name both NEI and

Codman Square Neighborhood Development Corporation as additional insured on its policy

certificates.  [Sub. Agmt. § 13.1.5].

### iii.   The Personal Injury Action

In June 2016, NEI was hired to perform construction, rehabilitation, demolition, and

environmental work at a job site in Boston.  [Id. ¶ 1].  NEI, in turn, hired Wendy's as a

subcontractor to perform drywalling and related work at the job site.  [Id. ¶ 2].  NEI also hired

Hannah Environmental Energy, Inc. ("Hannah") to perform demolition, salvage, and

environmental work at the job site.  [Id. ¶ 4].  Mr. Menchion was an employee of Hannah.  [Id. ¶

5].

On the day of the accident in question, Wendy's had caused the floor of the job site to be

covered in drywall mud.  [See id. ¶ 3].  Mr. Menchion, while operating a circular saw, slipped

and fell on a muddy surface at the job site, sustaining serious bodily injuries.  [Id. ¶ 8].

In May 2021, Mr. Menchion filed a lawsuit in Norfolk Superior Court against NEI and

Wendy's, alleging that both parties' negligence had caused his injuries.[2]  [Dkt. 21-1].

Specifically, his complaint alleges that NEI, as the general contractor, owed a duty to provide a

reasonably safe workplace for all workers at the job site, and was responsible for job and safety

training for Hannah employees.  [SMF ¶¶ 6–7].  It alleges that NEI was negligent in its failure to

---

[2] Mr. Menchion's lawsuit also contains a negligence claim against Contractor's Risk Management, Inc., which is not
a party to this action.  Further, Mr. Menchion's wife, Kyleanne Menchion, brings loss of consortium claims against
all three defendants in the Norfolk Superior Court suit.  Ms. Menchion is not a party to this action.  [Dkt. 21-1].

inspect the property, supervise its employees, and to otherwise lawfully perform its duties to provide a reasonably safe workplace and adhere to pertinent regulations.  [See id. ¶ 9].  Likewise, the complaint alleges that Wendy's was negligent in its performance of drywalling work when its employees "created a hazardous condition by allowing unsafe amounts of drywall mud to accumulate and remain on the floor on the Subject Property for an unreasonable period of time." [Id. ¶ 11].  For purposes of this declaratory judgment action, AEIG and Mr. Menchion do not litigate the substance of Mr. Menchion's allegations against NEI and Wendy's in the Norfolk Superior Court action.

### b. Procedural History

In March 2021—two months before Mr. Menchion filed his personal injury lawsuit in Superior Court—AEIG filed this action in federal court, naming Mr. Menchion, NEI, and Wendy's as defendants, and seeking a declaratory judgment relieving it of any duty under the CGL policy or umbrella policy to defend or indemnify Wendy's or NEI in relation to Mr. Menchion's injuries.  [Dkt. 1].  After Mr. Menchion initiated the Norfolk Superior Court action, AEIG amended its complaint to reference that action, and to assert that it similarly owed no duty to defend or indemnify Wendy's or NEI in relation to Mr. Menchion's injuries.  [Dkt. 4].  AEIG timely served all three defendants, [Dkts. 9, 10, 13], but only Mr. Menchion answered, [Dkt. 8]. With the litigation proceeding only against Mr. Menchion, AEIG filed the instant motion for summary judgment.  [Dkt. 20].  Mr. Menchion, in his opposition, asks for the Court to grant summary judgment in favor of the absent party Wendy's by declaring that AEIG owes a duty to defend and indemnify it in relation to the Norfolk Superior Court action.  [Dkt. 25].

## II.   STANDARDS OF LAW

### a.   Summary Judgment

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine issue of material fact," and the moving party is entitled to judgment as a matter of law. Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020). The Court must determine (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence"; and (3) whether a fact that is genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 170 (D. Mass. 2001). Courts must draw all reasonable inferences in the non-moving party's favor, and the non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Paul, 948 F.3d at 49 (citation omitted). On issues where the non-moving party bears the ultimate burden of proof, the non-moving party "must present definite, competent evidence to rebut the motion." Mesnick, 950 F.2d at 822.

### b.   Insurance Coverage

Resolution of AEIG's claim turns on the interpretation of two contracts: the insurance policy AEIG issued to Wendy's, and the subcontractor agreement between Wendy's and NEI. Under Massachusetts law, "[t]he interpretation of an insurance contract is no different from the interpretation of any other contract, and [the court] must construe the words of the policy in their

usual and ordinary sense." Hakim v. Massachusetts Ins. Insolvency Fund, 675 N.E.2d 1161, 1164 (Mass. 1997). Any clause free of ambiguity is given "its usual and ordinary meaning," id. at 1165, and where "there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it,'" id. (quoting Trustees of Tufts Univ. v. Comm. Un. Ins. Co., 616 N.E.2d 68 (Mass. 1993)). This rule of construing ambiguous terms to benefit the insured "applies with particular force to exclusionary provisions," as these terms are "strictly construed," and "any ambiguity in the exclusion 'must be construed against the insurer.'" Id. (quoting Vappi & Co. v. Aetna, 204 N.E.2d 273 (Mass. 1965)); Performance Trans., Inc. v. General Star Indem. Co., 983 F.3d 20, 25 (1st Cir. 2020) ("Under Massachusetts law, courts should err on the side of the narrowest plausible interpretation of the exclusion and resolve doubts about the scope of an exclusion in favor of the insured.). Construction of a Massachusetts insurance policy "is a matter of law to be decided by a court, not a jury." U.S. Liab. Ins. Co. v. Benchmark Constr. Serv., Inc., 732 F.3d 37, 42 (1st Cir. 2013).

### i.  Duty to Defend and Indemnify

A Massachusetts insurance company "has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Masonic Temple Ass'n v. Patel, 185 N.E.3d 888, 898 (Mass. 2022) (quoting Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662 (Mass. 2011)). Conversely, when "the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose," the insurance company has no duty to defend its insured. Id. Although all ambiguous terms are construed in favor of the insured, the insured nevertheless "bears the initial burden of showing that the underlying suit falls within the policy."

Arch Spec. Ins. Co. v. Colony Ins. Co., 590 F.Supp.3d 395, 411 (D. Mass. 2022).  To satisfy this

burden, however, the insured party must establish merely "the possible existence of any legal or

factual basis for payment under a policy" in order to trigger the insurer's duty to defend.  Id.

(quoting Bucci v. Essex Ins. Co., 393 F.3d 285, 292 (1st Cir. 2005)); see Billings v. Commerce

Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010) ("In order for the duty of defense to arise, the

underlying complaint need only show, through general allegations, a possibility that the liability

claim falls within the insurance coverage. There is no requirement that the facts alleged in the

complaint specifically and unequivocally make out a claim within the coverage.").

    In evaluating whether an insured has established the possible existence of a duty to

defend, courts compare "the facts alleged in the underlying complaint with the insurance policy

provisions."  Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403–04 (1st Cir.

2009).  The *merit* of the complaint's allegations is of no relevance to this inquiry; the duty to

defend" is based on the facts alleged in the complaint and those facts which are known by the

insurer."  Arch, 590 F. Supp. 3d at 411 (quoting Boston Symphony Orchestra, Inc. v.

Commercial Un. Ins. Co., 545 N.E.2d 1156 (Mass. 1989)).  After performing this comparison,

"the court asks 'what an objectively reasonable insured, reading the relevant policy language,

would expect to be covered.'"  Id. (quoting BloomSouth, 562 F.3d at 404).

    The duty to defend is broader than the duty to indemnify, and under Massachusetts law,

"a finding that there is no duty to defend generally 'negates a duty to indemnify.'"  NGM Ins.

Co. v. Santos, 483 F. Supp. 3d 1, 15 (D. Mass. 2020) (quoting Liberty Mut. Ins. Co. v. MetLife,

260 F.3d 54, 62 (1st Cir. 2001)).

III.     **DISCUSSION**

The central provisions in this dispute are the employer's liability exclusion and separation of insured clauses in the CGL and umbrella policies AEIG issued to Wendy's, and the additional insured clauses in the subcontractor agreement between NEI and Wendy's. The parties are in apparent agreement as to the construction and legal effect of these clauses. The policies "contain[] an exclusion of coverage for any claim or suit caused by bodily injury to employees, contractors, and employees of contractors." [SMF ¶¶ 13, 18]. They extend coverage—subject to this exclusion of coverage—to any party that Wendy's names, in writing, as an additional insured on the CGL policy. [See id. ¶ 16]. AEIG asserts, and Mr. Menchion does not dispute, that these clauses thus exclude coverage for injury to any employee of any insured party, or any employee of any subcontractor of any insured party. On the facts of this case, the parties thus agree that there is no coverage for the injury to Mr. Menchion, an employee of a subcontractor of NEI, if NEI is in fact an insured party.

The parties likewise agree that Section 13 of the subcontractor agreement between NEI and Wendy's governs the Court's inquiry into whether NEI became an insured party on the AEIG policies issued to Wendy's. The agreement provides that NEI "and all other parties required of [NEI] shall be included as insureds [*sic*]" on Wendy's CGL policy through completion of "ISO Additional Insured Endorsement CG 20 10 11 85 or CG 2010 (10/93) and CG 20 37 (10/01) or CG 2033 (10.01), or an endorsement providing equivalent coverage to the additional insureds." [Sub. Agmt. § 13.1.1]. Wendy's was further required to name NEI as a "certificate holder" on the policy. [Id. § 13.1.5].

It is thus clear that, as a matter of law, the AEIG policy provides no coverage for either NEI or Wendy's regarding Mr. Menchion's injury if Wendy's properly added NEI as an insured

9

party on the policy.  Accordingly, the only inquiry for the Court is whether a triable question of fact exists on NEI's status as an insured party.  The policy documents in effect at the time of Mr. Menchion's injury indicate that there is no such question.  AEIG has submitted the "forms and endorsements schedule" to the Wendy's CGL policy, which lists the endorsements that had been made on the policy at the time of the injury.  [Dkt. 26-1 at 8].  Two of these endorsements are forms CG 2020 (4/13), "Addl Insd-Owners, Less. Or Con B" and CG 2033 (4/13) ("Add'l Insd-Owners, Lesses/Con.").  [Id.].  On the prior page of this document, NEI is listed as a "AI-OWNRS, LESSEES or CONTRACTR."  [Id. at 7].  The Court reads this document to indicate that Wendy's had executed two endorsements to add additional insured parties—specifically, owners, lessees and/or contractors—and that NEI was one of the owners, lessees, or contractors that had been named as an additional insured party via these endorsements.  Wendy's thus satisfied its obligation in the subcontractor agreement to add NEI as an additional insured party to its CGL policy through "an endorsement providing equivalent coverage to the additional insureds."  [Sub. Agmt. § 13.1.1].

Mr. Menchion argues that this evidence is insufficient to establish that NEI was an additional insured on the CGL policy at the time of his injury.  He cites the policy's requirement that Wendy's name additional insured parties in a writing, and the subcontractor agreement's requirement that Wendy's name NEI a certificate holder on the policy.  Indeed, neither a writing nor a certificate is in evidence.  However, the Court's task here is *not* to determine whether incontrovertible evidence exists to establish that Wendy's and NEI complied with all intermediate procedural steps necessary to add NEI to the policy.  It is merely to ask whether a reasonable fact-finder could, based on a preponderance of the evidence in this record, conclude that NEI was *not* an insured party at the time of the injury.  Because the record plainly indicates

that Wendy's executed sufficiently clear endorsements for AEIG to add NEI as an insured party on the face of the policy document, it is not reasonable to conclude that NEI was not an insured party.[3]

In sum, because NEI was an insured party on the AEIG CGL policy, and because Mr. Menchion was an employee of an NEI subcontractor, the policy's employer liability exclusion bars coverage for Mr. Menchion's injury.  AEIG thus has no duty to defend or indemnify Wendy's or NEI in the Norfolk Superior Court action.

## IV.    CONCLUSION

AEIG's motion for summary judgment [Dkt. 21] is **GRANTED**.  Mr. Menchion's cross-motion for summary judgment [Dkt. 25] is **DENIED**.  Within 14 days of entry of this order, AEIG shall propose an order of declaratory judgment and, if appropriate, move for default judgment against NEI and Wendy's.

      **SO ORDERED.**

February 6, 2023                                                  /s/ Angel Kelley
                                                                 ANGEL KELLEY
                                                                 U.S. DISTRICT JUDGE

---

[3] If NEI or Wendy's seeks to refute the Court's conclusion through documentary evidence unavailable to AEIG or Mr. Menchion, it may file an answer in this matter and move for reconsideration of this judgment.